**E-FILED**
Friday, 14 October, 2016  09:53:31 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| **ALANDO SMITH, and MAURICE HARRIS-BALL, individually and on behalf all others similarly situated,**<br><br>       **Plaintiffs,**<br><br>  **v.**<br><br>**ALAMO CLAIM SERVICE, PETER PERRINE, THORLIN LEE,DAVID SERFASS, CIS ALAMO, LLC, and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**<br><br>       **Defendants.** | **Case No.:<br>13 Civ. 01481-JES-JEH** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO APPROVE PLAINTIFFS' SETTLEMENT**

# TABLE OF CONTENTS

I.   Statement Of The Facts .................................................................................. 1

    A.   PROCEDURAL HISTORY ................................................................... 1

    B.   Plaintiffs' Counsel Thoroughly Investigated the Case ........................ 2

    C.   Settlement Negotiations ....................................................................... 3

II.   The Proposed Settlement ................................................................................ 4

    A.   Payments to Plaintiffs ......................................................................... 4

    B.   Named Plaintiffs' Service Payments .................................................... 6

    C.   Attorneys' Fees and Costs ................................................................... 6

    D.   Settlement Administration and Notice ................................................. 7

III.   LEGAL STANDARD ..................................................................................... 7

    A.   The Service Awards to the Named Plaintiffs Are Fair And Reasonable ........................... 11

IV.   THE   COURT   SHOULD   APPROVE   THE   AGREED   UPON
    ATTORNEYS' FEES AS REASONABLE ................................................... 14

    A.   The Attorneys' Fees and Costs Are Reasonable Because All the Plaintiffs
        Agreed to Them ................................................................................... 15

    B.   The Percentage of the Fund Method of Awarding Attorneys' Fees Is
        Appropriate ......................................................................................... 16

    C.   The Market Price Supports Plaintiffs' Counsel's Fee Request ........................... 18

        1.   Risk of Nonpayment ................................................................. 19

        2.   Plaintiffs' Counsel's Quality of Performance .......................... 20

        3.   Amount of Work Plaintiffs' Counsel Invested ........................ 21

        4.   Stakes of the Case .................................................................... 22

        5.   The Requested Attorneys' Fee Award Reflects the Normal Rate of Compensation
        in this Market and Wage and Hour Cases ................................ 22

V.   Counsel's Costs and Expenses ...................................................................... 25

VI.   CONCLUSION .............................................................................................. 26

**TABLE OF AUTHORITIES**

**Cases**

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ............................................................ 14

*Acevedo v. Workfit Med. LLC,* 6:14 Civ. 06221 EAW, 2016 WL 2962930
(W.D. N.Y. May 20, 2016) ........................................................................................ 10

*Adeva v. Intertek USA Inc., et al.*, 09 Civ. 01096-SRC-MAS (D. N.J. Dec. 22, 2010) ............... 24

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ...................................... 15

*American International Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727
(N.D. Ill. Feb. 28, 2012) .................................................................................... 12, 14

*Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Doc. 63 (Dec. 20, 2012) .......................... 16

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) ....................... 7

*Beatty v. Capital One Financial Corp.*, 12 Civ 424, Dkt. 75 (N.D. Ill.) ..................................... 23

*Beesley v. Int'l Paper Co.*, 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ................... 13

*Belton v. Alamo Claim Service,* 1:12 Civ. 01306-JES-BGC, Doc. 122
(C.D. Ill. Dec. 18, 2013) ................................................................................... passim

*Berger v. Xerox Corp. Ret. Income Guar. Plan,* 00 Civ. 584-DRH, 2004 WL 287902
(S.D. Ill. Jan. 22, 2004) ........................................................................................... 14

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) ...................................................... 16

*Bredbenner v. Liberty Travel, Inc.*, 09 Civ. 1248 MF, 2011 WL 1344745
(D. N.J. Apr. 8, 2011) ............................................................................................... 8

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 706 (1945) .............................................. 7

*Brumley v. Camin Cargo Control, Inc.*, 2:08 Civ. 01798-JLL–MAH, Dkt. 234
(D. N.J. March 26, 2012) ......................................................................................... 16

*Campbell v. Advantage Sales & Marketing LLC*, No. 1:09 Civ. 01430–LJM–MJD,
2012 WL 1424417 (S.D. Ind. April 24, 2012) ........................................... 16, 18, 23

*Campbell v. C.R. Eng., Inc.*, 2:13 Civ. 00262, 2015 WL 5773709
(D. Utah Sept. 30, 2015) ......................................................................................... 16

*Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 4760910
(S.D. N.Y. Oct. 5, 2012) ......................................................................................... 22

*City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F.Supp.2d 902 (S.D. Ill. 2012) ............................................................................ 23

*Clark v. Ecolab Inc.*, 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198 (S.D. N.Y. May 11, 2010) ................................. 8, 24

*Cortes v. New Creators, Inc.,* 15 Civ. 5680 (PAE), 2016 WL 3455383 (S.D.N.Y. June 20, 2016) ........................................................ 10

*Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979) .......................................... 8

*deMunecas v. Bold Food, LLC*, 09 Civ. 00440(DAB), 2010 WL 3322580 (S.D. N.Y. Aug. 23, 2010) .................................................. 24

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980) ................ 15

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08CV1694, 2010 WL 776933 (N.D. Ohio March 8, 2010) ................................................ 24

*Edelen v. American Residential Services, LLC*, 11 Civ. 2744, 2013 WL 3816986 (D. Md. July 22, 2013).................................................. 25

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)................. 11, 12

*Flores v. Swift Transportation Co.,* 2:14 Civ. 02900-AB-E (C.D. Cal. May 11, 2016)......... 16, 24

*Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11 Civ. 592–wmc, 2013 WL 5745102 (W.D.Wis. 2013)........................................ 22, 24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D. N.Y. 2005) ................. 24

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) ............................ 25

*Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012)................................................ 14

*Guippone v. BH S & B Holdings, LLC*, 09 Civ. 1029, 2011 WL 5148650 (S.D. N.Y. Oct. 28, 2011)................................................ 13

*Hadad v. World Fuel Servs., Inc.*, 13 Civ. 3802, 2013 WL 6498894 (N.D. Ill. Dec. 11, 2013) ................................................ 9

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)............................ 25

*Heder v. City of Two Rivers*, 255 F.Supp.2d 947 (E.D. Wis. 2003) ............... 25

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563 (S.D. N.Y. March 21, 2013)................................ 25

*Hess v. Sprint Communications Co. L.P.*, 3:11 Civ. 00035–JPB, 2012 WL 5921149 (N.D. W.Va. Nov. 26, 2012) ........................................................................................ 17

*Hosier v. Mattress Firm, Inc.*, 3:10 Civ. 294-J-32JRK, 2012 WL 2813960 (M.D. Fla. June 8, 2012), report and recommendation adopted, 3:10 Civ. 294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) ....................................................... 16

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364 (N.D. Ill. 2011) ...................................................................................................... 21

*In re Lloyd's American Trust Fund Litigation*, No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D. N.Y. Nov. 26, 2002) ................................................................... 17

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ........................................ passim

*Jackson v. Bloomberg L.P.*, 1:13 Civ. 02001-JPO-GWG (S.D. N.Y. July 14, 2016) ................... 14

*Kellar v. Summit Seating, Inc.*, 664 F.3d 169 (7th Cir.2011) ......................................... 9

*Khait v. Whirlpool Corp.*, 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D. N.Y Jan. 20, 2010) ................................................................................... 24

*Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217 (N.D. Cal. 2013) ............................... 22

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .................................... 8

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. 2014) ................................ 11

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987) .............. 11

*Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012) ......................................................... 8

*Meza v. 317 Amsterdam Corp.*, 14 Civ. 9007 (VSB), 2015 WL 9161791 (S.D. N.Y. Dec. 14, 2015) ............................................................................... 16

*Nelson v. Proxemics Consulting, Inc.*, 1:15 Civ. 00175-JD-SLC, 2016 WL 1166003 (N.D. Ind. Feb. 18, 2016), report and recommendation adopted, 1:15 Civ. 175 JD, 2016 WL 1165757 (N.D. Ind. Mar. 24, 2016) ...................................... 16, 23

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 97 Civ. 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................................ 19, 23

*Roberts v. Apple Sauce, Inc.*, 3:12 Civ. 830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) .......................................................................... 8

*Rotuna v. West Customer Management Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) .............................................. 24

*Rusin v. Chicago Tribune Co.*, 12 Civ. 1135 (N.D. Ill. June 26, 2013)................................... 14, 23

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) .......................................................... 18

*Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78, ¶5) ....................... 14

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011).................................... 18, 21, 24

*Scriptfleet, Inc.*, 12 Civ. 8230 GF, 2015 WL 4275540 (N.D. Ill. July 13, 2015)......................... 14

*Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548, 2012 WL 1320124 (S.D. N.Y. Apr. 16, 2012) ................................................................................................................. 13

*Silverman v. Motorola, Inc.*, 07 Civ. 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012)............. 18

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013)....................................... 13

*Skelton v. Gen. Motors Corp.,* 860 F.2d 250 (7th Cir. 1988) ..................................................... 16

*Slagel v. State Farm Mutual Auto Ins. Corp.*, 2008 WL 4093100 (Superior Court, Los Angeles County, California, July 17, 2008) ............................................................ 24

*Stefaniak v. HSBC Bank USA, N.A.*, 05 Civ. 720, 202008 WL 7630102 (W.D. N.Y. June 28, 2008) .................................................................................... 24

*Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.)*, 962 F.2d 566 (7th Cir.1992) ......................................................................... 19

*Stevens v. Safeway, Inc.*, 2:05 Civ. 01988-MMM-SH, Doc. 338 (C.D. Cal. Feb. 25, 2008) ....................................................................................... 14

*Stumpf v. Pyod, LLC*, 12 C 4688, 2013 WL 5753829 (N.D. Ill. Oct. 23, 2013) ................... 18, 19

*Summers v. UAL Corp. ESOP Committee*, 03 Civ. 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005)................................................................................... 9

*Sutton v. Bernard,* 504 F.3d 688 (7th Cir. 2007)...................................................... 16, 18, 19, 20

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................................................... 19

*Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.,* 02 Civ. 1109–DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004).......................................................... 23

*Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012)................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................... 17

*Will v. General Dynamics Corp.,* 06 Civ. 698–GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .......................................................................... 18

*Zolkos v. Scriptfleet, Inc.*, 12 Civ. 8230 GF, 2015 WL 4275540
(N.D. Ill. July 13, 2015)................................................................. 8, 13

## Statutes

29 U.S.C. § 202(a) ....................................................................... 7

29 U.S.C. § 215(b) ....................................................................... 8

29 U.S.C. § 255 ............................................................................ 9

## Other Authorities

*Court Awarded Attorney Fees, Report of the Third Cir. Task Force,* (Arthur F. Miller,
Reporter), *reprinted in* 108 F.R.D. 237 (3d Cir.1985) .................................... 17, 18

*Task Force Report*, Court Awarded Attorney Fees, 108 F.R.D. 237 (1986) ................ 18

## Rules

Fed.R.Civ.P. 23(h).......................................................................... 25

## Treatises

NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update" ...............11

Plaintiffs respectfully request that the Court define the group of persons who constitute Plaintiffs in this action to exclude those opt-ins who cannot be found or decline to participate in the settlement; dismiss without prejudice the non-participants and their claims, as well as any counterclaims against the non-participants; and approve the FLSA settlement reached between the participating Plaintiffs and Defendants (collectively, "Parties"), including service awards, attorneys' fees, and costs. Defendants do not oppose this Motion.

## I.   STATEMENT OF THE FACTS

### A.  PROCEDURAL HISTORY

On October 10, 2013, Plaintiffs Alando Smith and Maurice Harris-Ball (collectively, "Named Plaintiffs") filed this action on behalf of themselves and all other persons similarly situated, alleging that Defendants Alamo Claim Service; its principals Peter Perrine, David Serfass, Thorlin Lee (collectively, "Alamo"); CIS Alamo, LLC (collectively with Alamo, the "Alamo Defendants"); and State Farm Mutual Automobile Insurance Company ("State Farm") (collectively "Defendants") misclassified claims adjusters as independent contractors rather than as employees. Declaration of Matt Dunn In Support Of Plaintiffs' Motion To Approve Plaintiffs' Settlement ("Dunn Dec.") ¶ 4. Plaintiffs alleged that as a consequence of Defendants' misclassification, Defendants failed to pay adjusters one and one-half times their regular hourly rate of pay for time they worked over forty (40) hours in individual work weeks. *Id.*

On November 19, 2013, Alamo moved to dismiss the complaint for improper venue or alternatively transfer the case to Western or Northern Districts of Texas. *Id.* at ¶ 5. On December 3, 2013, CIS Alamo moved to transfer venue to the Northern District of Texas and also moved to dismiss the case under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. *Id.* In response, Plaintiffs moved to amend the complaint. *Id.*

1

State Farm answered the complaint on November 21, 2013 and the amended complaint on January 29, 2014. *Id.* at ¶ 6. CIS Alamo answered the amended complaint on June 25, 2014. *Id.* Alamo answered the amended complaint on August 25, 2014. *Id.* All of the Defendants denied that the independent contractor classification and non-payment of overtime wages was improper or unlawful. *Id.*

On January 17, 2014, Named Plaintiffs filed a motion for conditional certification of a FLSA collective action and notice to the class under 29 U.S.C. §216(b). *Id.* at ¶ 7. In the motion, the Named Plaintiffs sought to certify a class for:

> all persons who have worked for Alamo Claim Service or CIS Alamo in State Farm offices outside of Illinois as claims adjusters who were classified as independent contractors, were paid a day rate, worked more than 40 hours in a week, and were not paid overtime premium pay for working more than 40 hours in a workweek at any time since October 10, 2010

*Id.* Alamo moved to stay their response to Plaintiffs' motion until 21 days after they answered the amended complaint. *Id.*

On June 10, 2014, the Court denied Alamo's motion to dismiss the case for improper venue. Alamo moved for reconsideration and for the Court's leave to file an interlocutory appeal. *Id.* at ¶ 8. On September 16, 2014, the Court denied Alamo's motions for reconsideration and interlocutory appeal. *Id.* Defendants filed their opposition briefs to Plaintiffs' motion for certification. *Id.* Alamo also moved to strike a portion of Plaintiffs' FLSA conditional certification briefing. *Id.* On March 31, 2015 the Court granted Plaintiffs' motion for FLSA conditional certification. *Id.* at ¶ 9. Seventy-five (75) "opt-in" Plaintiffs joined the case by filing consents to sue. *Id.* On January 19, 2016, Alamo moved for leave to assert a counterclaim against a segment of the Plaintiffs who Alamo alleged previously signed releases in its favor in a prior lawsuit. *Id.* at ¶ 10.

**B.  Plaintiffs' Counsel Thoroughly Investigated the Case**

2

Plaintiffs' Counsel has conducted extensive investigation and prosecution of the claims in this case. This work includes, but is not limited to, engaging in full discovery for the Named and opt-in Plaintiffs, interviewing opt-in Plaintiffs, drafting and serving multiple discovery demands on Defendants, crafting an ESI protocol, reviewing thousands of pages of documents, including ESI, produced by Defendants, reviewing and analyzing time and payroll data, drafting and filing motions for conditional certification under 29 U.S.C. § 216(b), fielding questions from potential opt-in plaintiffs, preparing for and attending a full-day mediation, and engaging in settlement negotiations. *Id.* at ¶ 11.

### C. Settlement Negotiations

In late December 2015, the Parties began mediation discussions. The Parties ultimately agreed to attempt to mediate before Eric Galton and scheduled the mediation for February 18, 2016, in Dallas, Texas. Mr. Galton is a highly experienced mediator and his extensive qualifications are attached to the Dunn Declaration. In January 2016, Alamo provided Plaintiffs' Counsel with the wage and hour records. Using the records, Plaintiffs' Counsel calculated damages and provided damages to Defendants on February 5, 2016. Before the mediation, the Parties submitted separate mediation statements to Mr. Galton. *Id.* at ¶ 12.

On February 18, 2016, after an all-day mediation session in Dallas, Texas, the Parties were able to agree on a resolution of the claims raised in the case for mutual consideration, including a cash payment. On the mediation date, the parties signed a term sheet that accepted the material terms of settlement. As a result of the mediation and after two months of extensive negotiations over the settlement agreement terms, the Parties negotiated the Settlement and Release Agreement. *Id.* at ¶ 13. Described in further detail below, the settlement provides for a payment to all Plaintiffs.

## II.     THE PROPOSED SETTLEMENT

The details of the settlement are contained in the Settlement and Release Agreement. Ex. 2.[1] The settlement value considered the risks for each claim including: 1) the risk that Defendants would be successful with their affirmative defense that Plaintiffs were independent contractors and not employees; 2) the risk that Plaintiffs would not be able to prove all the overtime hours they claimed to have worked; 3) the risk that Plaintiffs would not be able to establish a third year of FLSA liability by proving that Defendants willfully violated the law; 4) the risk that Defendants would be able to avoid liability for liquidated damages; and 5) the risk that some Plaintiffs may have liability for the counterclaim. Dunn Dec. ¶ 15. The settlement value also considered the value of receiving payment without having to wait for the litigation to take its course. Attorneys' fees and costs were provided on a separate line from the aggregate Plaintiffs' damages. *Id.*

### A.  Payments to Plaintiffs

Each Plaintiffs' *pro rata* settlement was calculated based on his or her total damages. For purposes of calculating Plaintiffs' payments from the settlement, the gross compensation paid to each Plaintiff and the dates of employment each Plaintiff worked were determined using wage and hour data Alamo produced to Plaintiffs' Counsel for mediation. *Id.* at ¶ 16.

Each Plaintiff was mailed and/or emailed a copy of the Settlement and Release Agreement with an individual acknowledgment form that stated the specific amount the Plaintiff will receive in unpaid wages and liquidated damages. In a separate letter to Plaintiffs, Plaintiffs' Counsel provided the amount Defendants will pay in attorneys' fees and costs, and service

---

[1] Defendants submitted an unredacted copy of the Settlement and Release Agreement to the Court.

payments. Plaintiffs' Counsel communicated, or attempted to communicate, with each Plaintiff and responded to any of their questions and concerns. Plaintiffs approved the Settlement and Release Agreement, including their individual recovery amount, attorneys' fees, costs in the amount of $5,868, and the service payments. *Id.* at ¶ 17.

With the exception of the four Plaintiffs who have not signed the Settlement and Release Agreement, funds for checks payable to Plaintiffs that remain uncashed one hundred twenty (120) days after the Court's order approving the settlement shall be paid over by the Settlement Administrator to the unclaimed property division of the last known state of residence of each respective Plaintiff. The Settlement Administrator will also issue to Alamo's Counsel and Plaintiffs' Counsel a final report of all disbursements that includes the date that each payment was negotiated by the Plaintiff. *Id.* at ¶ 20.

Only four Plaintiffs have not signed the Settlement and Release Agreement; they either have not responded, cannot be reached, or decline to receive payment and wish to be removed from the class (collectively, the "Non-Participants"). Because enforceability of the Settlement and Release Agreement is conditioned upon 100% participation by Plaintiffs, the Parties request the Court to determine the composition of Plaintiffs in this action prior to approval of the settlement or dismissal of the class as follows: 1) Order that the settlement payment checks be issued to the Non-Participants immediately; 2) Require that the four checks to the Non-Participants contain endorsement language thereon that subjects the payee to the Settlement and Release Agreement if the check is negotiated; 3) Impose a final, 30-day deadline on the Non-Participants to negotiate their checks, or the checks expire and become invalid; 4) Order that the Non-Participants who timely negotiate their checks become constituents of the Plaintiff class in this action and settlement; and 5) Order that the Non-Participants who fail to timely negotiate

their checks be dismissed without prejudice from this action, as well as dismissing any counterclaim against them without prejudice and further declaring that no releases are granted by and between the Non-Participants and the Defendants because the Non-Participants who fail to timely cash their checks are removed from the class of Plaintiffs and do not become part of the Settlement and Release Agreement. The funds for the checks that are issued to the Non-Participants which expire after thirty (30) days from the date of issuance shall revert to the Defendant(s) who paid them. *Id.* at ¶ 21.

### B.  Named Plaintiffs' Service Payments

The Settlement and Release Agreement also contemplates service payments to the Named Plaintiffs to acknowledge their service to the class. These payments are in addition to any payment that these individuals receive as their pro rata share of the settlement. *Id.* at ¶ 22.

In this case, the Named Plaintiffs were responsible for initiating and maintaining this action. They participated in the case, provided valuable information to Plaintiffs' Counsel, were prepared to respond to Defendants' discovery demands, attended the mediation session, and performed everything that was asked of them. Without the efforts of the Named Plaintiffs, this case would not have been filed and this settlement would not have been achieved. Harris-Ball and Smith bore the risk of being the Named Plaintiffs in a case where the Defendants are part of a small employer community. As a result of the efforts, risks, and responsibilities that the Named Plaintiffs bore on behalf of the Class and the result achieved, the service payments to these individuals are well justified. Defendants do not object to the requested service awards. *Id.* at ¶¶ 23-26.

### C.  Attorneys' Fees and Costs

The Settlement and Release Agreement provides that Plaintiffs' Counsel will apply to the Court for the payment of attorneys' fees and costs. *Id.* at ¶ 29. Defendants do not object to Plaintiffs' Counsel's fees and costs application within these limits. *Id.* All of the Plaintiffs who signed the Settlement and Release Agreement also agreed to the specific amount Plaintiffs' Counsel will recover in fees and costs. *Id.* at ¶ 30.

### D.  Settlement Administration and Notice

Under the terms of the Settlement and Release Agreement, the Parties agreed to use Simpluris, Inc., Class Action Settlement Administration as the Settlement Administrator. The Settlement Administrator will be responsible for performing claims administration and distribution of the settlement checks to the Plaintiffs. Alamo will pay the Settlement Administrator's fees in accordance with and subject to the cap in the Settlement and Release Agreement. The Parties will cooperate with the Settlement Administrator to ensure that it has all of the information it needs to perform these tasks. *Id.* at ¶ 27.

Plaintiffs' Counsel will provide the Settlement Administrator the most recent mailing address for Plaintiffs. *Id.* at ¶ 28.

## III.    LEGAL STANDARD

The FLSA was designed to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) *quoting* 29 U.S.C. § 202(a). Thus, in order to protect workers, typically a FLSA claim cannot be waived or settled except in two circumstances. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The exceptions are (1) that the Secretary of Labor supervises the back wage payments or (2) that the

court approves the proposed settlement between the employer and employees. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).[2]

The Court's role in approving a settlement of FLSA claims is to ensure that it represents a fair settlement of a bona fide dispute. *Roberts v. Apple Sauce, Inc.*, 3:12 Civ. 830-TLS, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Bredbenner v. Liberty Travel, Inc.*, 09 Civ. 1248 MF, 2011 WL 1344745, at *18 (D. N.J. Apr. 8, 2011). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.; Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54; *Clark v. Ecolab Inc.*, Nos. 07-8623, 04-4488, 06-5672, 2010 WL 1948198, *7 (S.D. N.Y. May 11, 2010). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.; Zolkos v. Scriptfleet, Inc.*, 12 Civ. 8230 GF, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015). "As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Belton v. Alamo Claim Service,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 8 (C.D. Ill. Dec. 18, 2013); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements.").

The FLSA settlement in this case easily meets the standard for approval. The settlement was the result of extensive pre-suit investigation, a motion for collective certification, and substantial arm's-length negotiations. Recognizing the uncertain legal and factual issues

---

[2] The Fifth Circuit has found that under some circumstances, private FLSA settlements can bind parties even without court or Department of Labor approval. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012), (citations omitted).

involved, the parties reached the settlement with the assistance of an experienced mediator. The settlement amount is substantial in light of the considerable risk that Plaintiffs face. By Plaintiffs' estimate, Plaintiffs will recover approximately 40% of their total damages.

This litigation included several bona fide disputes ranging from whether Plaintiffs are due overtime wages at all to the correct amount of damages. For example, Defendants denied that Plaintiffs were due any overtime wages and maintained throughout the litigation that adjusters were properly classified as independent contractors under the FLSA. *See*, *e.g.*, State Farm's Answer, Dkt 31, p.14; CIS Alamo's Answer, Dkt. 94, p. 22; Alamo Defendants' Resp. Opp. Cond. Cert, Dkt 110, p. i. Defendants raised an affirmative statute of limitations defense that could have reduced any potential recovery of FLSA claims from three to two years. Alamo Defendants' Answer, Dkt. 107 p. 25; *see* 29 U.S.C. § 255 (providing for a two-year statute of limitations unless employee can establish employer acted willfully). Moreover, Plaintiffs had an affirmative burden to establish the overtime hours that they worked and Alamo's and State Farm's knowledge of the work. *Hadad v. World Fuel Servs., Inc.*, 13 Civ. 3802, 2013 WL 6498894, at *2 (N.D. Ill. Dec. 11, 2013) (*citing Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir.2011)). Further, Alamo moved to amend their answer to include counterclaims against Plaintiffs who were part of the *Belton* settlement. There is no question that bona fide disputes exist between the Parties.

The proposed allocation of the settlement is also reasonable. It reflects a proportion of damages owed to each Plaintiff based on his or her length of employment, weekly pay, and hours worked. *Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 9; *see also, Summers v. UAL Corp. ESOP Committee*, 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis").

When a settlement is the result of arm's-length negotiations and with the assistance of a mediator and competent counsel, then that "constitute[s] *prima facie* evidence of a fair settlement." *Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 12. "Moreover, the use of an experienced neutral also supports a finding that the settlement was non-collusive and reached through arm's length negotiations." *Id.* at p. 8. Here, the proposed Settlement resulted after significant litigation followed by months of arm's length negotiations between experienced counsel with the assistance of an experienced mediator after the litigation had proceeded to a stage where both sides could assess their risks and liability. Accordingly, there is a presumption that the settlement is fair and reasonable.

Because each Plaintiff will recover a significant percentage of their total maximum damages, including for those Plaintiffs whose claims are time barred, this is further evidence that the settlement is fair and reasonable. Overall Plaintiffs will recover approximately 40% of the maximum damages that they could have received if they prevailed at trial on every aspect of their claims. This amount is significant given Defendants' defenses that Plaintiffs were not entitled to any recovery because they were independent contractors. Further, Alamo asserted that 27 Plaintiffs previously released their claims in *Belton*, others are outside of the FLSA statute of limitations, and even if Plaintiffs prevailed in proving that they were employees, Defendants still had defenses to the number of hours worked, the applicable statute of limitations, and good faith defense to liquidated damages. Thus, the percentage of recovery is well within the range that courts approve. *See, Cortes v. New Creators, Inc.,* 15 Civ. 5680 (PAE), 2016 WL 3455383, at *3 (S.D. N.Y. June 20, 2016) (approving FLSA recovery as little as 11.3% of total damages)*;* *Acevedo v. Workfit Med. LLC,* 6:14 Civ. 06221 EAW, 2016 WL 2962930, at *6 (W.D. N.Y. May 20, 2016) (approving FLSA and New York Labor Law settlement that is 23% of total damages)*;*

*Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Dkt. 66, pp. 5-6 (C.D. Cal. Nov. 2, 2015) (approving recovery of 24% to 51% of maximum); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. 2014) (9.1% of the total value of the action was "within the range of reasonableness"); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial). Moreover, the actual recovery amount under the settlement is well above average recoveries in wage-and-hour actions. See, NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update," http://www.nera.com/publications/archive/2015/trends-in-wage-and-hour-settlements-2015-update.html, (the overall average per plaintiff settlement value in wage-and-hour settlements during the period 2007-2015 was $1,097).

Not only does the settlement recover a significant amount for each Plaintiff and a large percentage of their total possible claim, it also provides them with a recovery without having to go through a prolonged litigation process and bear the risks of being unsuccessful. Accordingly, the settlement amount is fair and reasonable.

### A.  The Service Awards to the Named Plaintiffs Are Fair And Reasonable

Because of the two Named Plaintiffs' efforts resulting in a substantial settlement on behalf of the other 75 opt-ins, the Named Plaintiffs are entitled to a service payment, to be distributed from the settlement award. "Because a named plaintiff is an essential ingredient of any class action, a[ service] award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for the same reasons they apply in Rule 23 class actions). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect

the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* "Indeed, awarding a named plaintiff an [service] payment recognizes the individual's contribution for standing up for the rights of other employees who have also been victims of discrimination." *Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 13. In addition, the risks in bringing a lawsuit, such as reasonable fear of workplace retaliation, risk of reputation, risks of costs associated with litigation, expanded waivers and other post-settlement duties are all relevant factors weighing in favor of a service award. *See Cook,* 142 F.3d at 1016 (noting possible workplace retaliation as a risk); *American International Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, *16 -17 (N.D. Ill. Feb. 28, 2012) (service awards may be granted when the class representatives have borne unique costs "in the form of retaliation or loss of reputation").

The two Named Plaintiffs represented the adjusters by spending considerable time working with Plaintiffs' Counsel, educating counsel on the adjusters' job duties, scheduling, and compensation, developing and then amending the complaint, successfully seeking FLSA class certification, modeling damage calculations, participating in discovery and settlement negotiations, and ultimately concluding a successful settlement for the class. Although trial was not necessary, they provided testimony in support of Plaintiffs' motion to certify the FLSA class and were prepared to testify at trial. Both Named Plaintiffs took the day off from work, and Named Plaintiff Harris-Ball flew to Dallas to attend the mediation. Dunn Dec. ¶¶ 22-26.

The Named Plaintiffs secured a significant recovery for the class. Some Plaintiffs' claims are outside of the FLSA's statute of limitations. And they will still receive a minimum recovery. Further, Alamo claimed that 27 Plaintiffs waived their claims in the *Belton* settlement and brought counterclaims against them. Those 27 Plaintiffs will also recover their pro rata share

here. Overall, the class recovered approximately 40% of their total damages. As a result, not only did all of the Plaintiffs benefit, when they might not have had the Named Plaintiffs not filed this case, they recovered a substantial amount of their FLSA claims. All of the 73 Plaintiffs who signed the settlement agreement approved the service payments.

The Named Plaintiffs also bore the risk of retaliation by publicly bringing claims against a major industry player. *See Belton,* 1:12 Civ. 01306-JES-BGC, Dkt. 122, p. 13 (acknowledging the risks the named plaintiffs assumed in bring the litigation); *see Beesley v. Int'l Paper Co.*, 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers also carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D. N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D. N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").[3] As a result, the Named Plaintiffs' efforts allowed 75 additional adjusters to recover unpaid overtime wages.

The service payments are consistent with the payments made to other Named Plaintiffs in this District. *Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 8; *Zolkos v. Scriptfleet, Inc.*, 12 Civ.

---

[3] Although Smith had left Alamo's employ when he brought this case, he used his middle name in the caption to avoid the risk of retaliation by future employers who might discover that he brought claims against a former employer through internet searches.

8230 GF, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (approving $10,000 service payment to named plaintiff); *Schmidt v. Smith & Wollensky LLC*, Case 09-2752 (N.D. Ill) (Dkt. 78, ¶5)(approving $10,000 service award in Illinois Minimum Wage Law case); *Rusin v. Chicago Tribune Co.*, 12 Civ. 1135 (N.D. Ill. June 26, 2013) (attached as Exhibit) (Chang, J.) (approving $10,000 service award to named plaintiff). Indeed, courts in this Circuit have approved service awards as high as $20,000 per named plaintiff. *See, e.g., American International Group, Inc.*, 2012 WL 651727, *16-17 (approving $25,000 service award); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 00-584-DRH, 2004 WL 287902, at *7 (S.D. Ill. Jan. 22, 2004) (approving $20,000 service award). The service payments sought here are lower than other awards approved by other federal judges. *See*, *e.g.*, *Jackson v. Bloomberg L.P.*, 1:13 Civ. 02001-JPO-GWG, Dkt. 120, p. 3 (S.D. N.Y. July 14, 2016) ($100,000 enhanced Service Award to the Named Plaintiff); *Stevens v. Safeway, Inc*., 2:05 Civ. 01988-MMM-SH, Doc. 338, p. 20 (C.D. Cal. Feb. 25, 2008) (approving service payments of $20,000 in an FLSA collective action settlement); *Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to each named plaintiff).

Thus, the Named Plaintiffs' service award should be approved.

## IV.  THE COURT SHOULD APPROVE THE AGREED UPON ATTORNEYS' FEES AS REASONABLE

Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations

14

and discourage future misconduct of a similar nature. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338–39 (1980). Section 216(b) of the FLSA provides that where an employee prevails in an action, attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society,* 421 U.S. 240, 261 n.34 (1975).

### A.  The Attorneys' Fees and Costs Are Reasonable Because All the Plaintiffs Agreed to Them

The Named and opt-in Plaintiffs agreed to Plaintiffs' Counsel's fee of up to one-third of the settlement and reimbursement for costs. Each of the Named Plaintiffs specifically agreed in their individually negotiated retainers that Plaintiffs' Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus litigation costs. Dunn Dec. ¶ 31. Similarly, the Consent to Sue forms, approved by the Court, and the forms that each of opt-in Plaintiffs signed and submitted to the Court state "I understand that the fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater." *Id.* The opt-ins also agreed in their Consent to Sue to reimburse Plaintiffs' Counsel for costs. *Id.* The Settlement and Release Agreement provides that Defendants will not oppose Plaintiffs' Counsel's attorneys' fees and costs application. Each Plaintiff's settlement agreement was accompanied by a letter from Plaintiffs' Counsel explaining the allocation of the settlement fund including the amount of fees and costs. Dunn Dec. ¶ 32. All of the Plaintiffs who signed and returned their settlement agreements agreed to Plaintiffs' fees and costs. *Id.* In accordance with the numerous agreed upon provisions, an award of one-third of the gross settlement in attorneys' fees plus costs is appropriate. *Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 15 (Plaintiffs' Counsel entitled to the fees and costs sought under the terms of the retainer, consent to sue forms, and settlement agreement); *Ambrosino v. Home Depot U.S.A, Inc.,* 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Banales v.*

*Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Doc. 63, p. 5 (S.D. Cal. Dec. 20, 2012) ("each Plaintiff was involved in the settlement process, and each has reviewed and agreed to the settlement terms.")

### B.  The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate

Courts regularly award plaintiffs' counsel as a percentage of the settlement fund in FLSA cases. *Nelson v. Proxemics Consulting, Inc.*, 1:15 Civ. 00175-JD-SLC, 2016 WL 1166003, at *2 (N.D. Ind. Feb. 18, 2016), report and recommendation adopted, 1:15 Civ. 175 JD, 2016 WL 1165757 (N.D. Ind. Mar. 24, 2016) (approving fees as a percentage of the fund); *Campbell v. Advantage Sales & Mktg. LLC*, 1:09 Civ. 01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (same); *Flores v. Swift Transportation Co.,* 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016); *Meza v. 317 Amsterdam Corp.*, 14 Civ. 9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015); *Hosier v. Mattress Firm, Inc.*, 3:10 Civ. 294-J-32JRK, 2012 WL 2813960, at *6 (M.D. Fla. June 8, 2012), report and recommendation adopted, 3:10 Civ. 294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012); *Campbell v. C.R. Eng., Inc.*, 2:13 Civ. 00262, 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015); *Brumley v. Camin Cargo Control, Inc.*, 2:08 Civ. 01798-JLL –MAH, Dkt. 234, p. 18 (D. N.J. March 26, 2012).

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007), *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). The Seventh Circuit has directed district courts to evaluate plaintiffs' counsel's fee request based on the "market price for legal

services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time". *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). When district courts award fees in common fund cases, they prefer to apply the percentage of the fund method to determine the reasonableness of the fee award under the Seventh Circuit's market-based approach.

There are at least two reasons that courts favor the use of the percentage of the fund method. One reason is that the method aligns plaintiffs' counsel with the class members. Under the percentage of the fund method, plaintiffs' counsel is encouraged to efficiently litigate the case and develop an early resolution and that benefits both class members and counsel. As a district court explained:

> The percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system. The percentage approach is also the most efficient means of rewarding the work of class action attorneys, and avoids the wasteful and burdensome process- to both counsel and the courts-of preparing and evaluating fee petitions, which the Third Circuit Task Force described as "cumbersome, enervating, and often surrealistic."

*In re Lloyd's American Trust Fund Litigation*, 96 Civ.1262 RWS, 2002 WL 31663577, *25 (S.D. N.Y. Nov. 26, 2002) (*citing Court Awarded Attorney Fees, Report of the Third Cir. Task Force,* (Arthur F. Miller, Reporter), *reprinted in* 108 F.R.D. 237 (3d Cir.1985)); *see also*, *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation,'") (citations omitted); *Hess v. Sprint Communications Co. L.P.*, 3:11 Civ. 00035–JPB, 2012 WL 5921149, *2 (N.D. W.Va. Nov. 26, 2012). Courts also favor the percentage of the fund method because it simplifies the calculation and allows the court to avoid a burdensome and detailed fee analysis.

*Campbell*, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) ("the percentage method has advantages for simplicity of administration"); *Stumpf v. Pyod, LLC*, 12 C 4688, 2013 WL 5753829, *4 (N.D. Ill. Oct. 23, 2013). "[T]he use of the percentage-of-the-fund method also relieves the court of the 'cumbersome, enervating, and often surrealistic process' of evaluating fee petitions." *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) (*quoting Task Force Report*, Court Awarded Attorney Fees, 108 F.R.D. 237 (1986)); *see also Sutton*, 504 F.3d at 693 (7th Cir. 2007) ("In a common fund case, where the defendant's liability is limited to the amount paid into the fund, there is no danger of unduly burdening that party with payment of the plaintiffs' attorneys' fee for time spent on unsuccessful claims.").

When the court awards fees based on the percentage of the fund method, district courts in Illinois typically do not engage in a lodestar cross-check. Courts have found that the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n. 27 (N.D. Ill. 2011) (*citing Will v. General Dynamics Corp.,* 06 Civ. 698–GPM, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010)). Courts have noted that a lodestar analysis was unnecessary "to reinforce the same conclusion." *Silverman v. Motorola, Inc.*, 07 C 4507, 2012 WL 1597388, *4 (N.D. Ill. May 7, 2012). The Court does not need to engage in a lodestar analysis.

A fee award based on a percentage of the common fund is appropriate.

### C.  The Market Price Supports Plaintiffs' Counsel's Fee Request

In deciding fee levels in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton,* 504 F.3d at 692, 693–94, (*citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.

2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Under the market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client" *Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* 97 C 7694, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001) (*quoting Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.)*, 962 F.2d 566, 572 (7th Cir.1992)).

To determine what percentage of the fund should be awarded, the Court considers the "the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Stumpf v. Pyod, LLC*, 2013 WL 6123156, *1 (N.D. Ill. 2013) (*citing In re Synthroid Mktg. Litig.*, 264 F.3d at 721). Each factor is considered below.

### 1.   Risk of Nonpayment

One of the factors that the Court considers is the risk of nonpayment to Plaintiffs' Counsel. As the Seventh Circuit explained "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit." *Sutton*, 504 F.3d at 694 (7th Cir. 2007); *see also*, *Belton,* 1:12 Civ. 01306-JES-BGC, Dkt. 122, p. 16. Here, Plaintiffs' Counsel agreed to litigate this case on a contingency fee basis, taking the risk that it would obtain no recovery at all. Dunn Dec. ¶ 39. In fact, the contingency fee agreement specifically provided that Plaintiffs'

19

Counsel would receive nothing if it ultimately failed to secure a monetary recovery for the Plaintiffs. There are myriad ways in which Plaintiffs could have lost the case resulting in recovering no fees at all. For example, Defendants asserted affirmative defenses to Plaintiffs' claims that if successful would have relieved Defendants of any overtime obligation and Plaintiffs' Counsel would not have recovered any fees at all. Plaintiffs' Counsel bore the burden of establishing final certification of the FLSA collective action. Plaintiffs' Counsel also bore the risks of changes in the law and appeals. The contingency risk that Plaintiffs' Counsel took weighs in favor of the requested fee. *Sutton*, 504 F.3d at 694 (7th Cir. 2007).

## 2.  Plaintiffs' Counsel's Quality of Performance

Another factor that the Court considers is plaintiffs' counsel's performance in litigating the case. *In re Synthroid Mktg. Litig.*, 264 F.3d at 721. As this Court previously recognized in *Belton*, Plaintiffs' Counsel are experienced wage and hour litigators. Plaintiffs' Counsel has zealously represented the Named Plaintiffs and opt-ins throughout this litigation. Plaintiffs' Counsel promptly sought FLSA conditional certification for claims adjusters that worked for Alamo in State Farm's offices outside of Illinois. Plaintiffs' Counsel opposed Alamo's multiple motions to transfer the case to Texas or dismiss it outright.

Ultimately, Plaintiffs' Counsel's efforts resulted in a favorable settlement on behalf of the entire class of claims adjusters that worked for Alamo in State Farm's offices outside of Illinois. The settlement brings substantial value to the Named Plaintiffs and opt-ins that comprise the class of Plaintiffs. The fact that Plaintiffs will recover a significant amount without the continued uncertainty of the pending counterclaim and/or anticipated dispositive motions and trial, and is reached through this settlement, rather than after years of additional litigation, qualifies this settlement as a favorable result.

### 3.   Amount of Work Plaintiffs' Counsel Invested

The next factor the Court considers is the amount of work that plaintiffs' counsel invested in the case. *In re Synthroid Mktg. Litig.*, 264 F.3d at 721. Here, Plaintiffs' Counsel spent ▮ attorney hours and ▮ paralegal hours. Dunn Dec. ¶ 38. This work included the initial case intake analysis; collecting the evidence in support of the collective action motion; opposing Alamo's various motions; serving discovery demands on Defendants; reviewing thousands of pages of documents and electronic wage and hour data; preparing clients for settlement discussions; interviewing clients about their hours worked and factors surrounding Defendants' independent contractor defense; creating a damages model for settlement; attending the mediation in Dallas, Texas; negotiating the settlement agreement; drafting the settlement papers; and communicating with multiple defense counsel, the Named Plaintiffs and opt-ins. Plaintiffs' Counsel will continue to perform work after the Court grants final approval. All of this work results in a lodestar value of ▮ and a favorable settlement on Plaintiffs' behalf.

Although a lodestar cross-check is unnecessary in evaluating the reasonableness of a fee based on a percentage of the fund, *see Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011), a multiplier of the lodestar is common. Courts in this Circuit and others recognize that a multiplier between 1 and 4 of the lodestar is regularly approved in common fund cases. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir.1991); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 381 (N.D. Ill. 2011) ("Typical multipliers awarded in comparable class action litigation average around 4, but are often much higher."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (a multiplier of 2.5 is not unreasonable). Similarly, a multiplier in wage and hour cases is also commonly awarded. *See, e.g.*, *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11 Civ. 592–wmc,

2013 WL 5745102 (W.D. Wis. Oct. 23, 2013) (awarding a 3.08 multiplier in a FLSA and Rule 23 case under the wage and hour laws of Minnesota); *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *8 (N.D. Cal. July 11, 2013) (awarding a 3.36 multiplier in a FLSA and California state class action); *Capsolas v. Pasta Res. Inc.*, 10 Civ. 5595, 2012 WL 4760910, *8 (S.D. N.Y. Oct. 5, 2012) (awarding 33.33% fee in $5.25 million settlement; lodestar multiplier of 3.96 approved).

Currently, Plaintiffs' Counsel's multiplier is ███, and is within the range of reasonableness. Dunn Dec. ¶ 34. Further, the multiplier will decrease even further as Plaintiffs' Counsel performs additional work that is necessary to bring the case to conclusion. For example, Plaintiffs' Counsel continues to answer Plaintiffs' questions about the settlement, monitor the settlement process to ensure that payments are made by Alamo, follow up with the Settlement Administrator if Plaintiffs have a change of address, and ensure that Plaintiffs receive their payments. Thus, this factor favors Plaintiffs' Counsel's fee request.

#### 4.  Stakes of the Case

The last factor the Court considers is the stakes of the case. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001). The stakes in this case were high. The Parties negotiated a significant settlement for unpaid overtime wages on behalf of 77 claims adjusters. If the Parties had continued litigation, the claims adjusters risked recovering nothing if Defendants prevailed on their defenses or the counterclaim as to a significant portion of the Plaintiff class. This factor favors Plaintiffs' Counsel's fee request.

#### 5.  The Requested Attorneys' Fee Award Reflects the Normal Rate of Compensation in this Market and Wage and Hour Cases

The Court also considers the normal rate of compensation in the market at the time to determine the reasonableness of the fee. The contract between the parties is an indication of the normal rate of compensation in the market for plaintiffs' counsel's legal service. *City of*

*Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) (*citing In re Synthroid Mktg. Litig.*, 325 F.3d 974, 976 (7th Cir. 2003)). Here, Plaintiffs' Counsel agreed to represent the Named Plaintiffs and opt-in Plaintiffs for a fee of up to one-third of the gross settlement. Each Named Plaintiff agreed in their individual retainer that Plaintiffs' Counsel would recover up to one-third of the settlement. Similarly, each opt-in Plaintiff agreed to the same arrangement in their signed Consent to Sue forms. Further, every Plaintiff who signed the settlement agreement agreed to Plaintiffs' Counsel's fees.

The normal rate of compensation is also reflected by the percentage approved by other courts in comparable litigation. *See Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.,* 02 Civ. 1109–DRH, 2004 WL 768658, *1 (S.D. Ill. Mar. 19, 2004). As a general matter, attorneys regularly negotiate contingent fees between 33.33% and 40%. *Retsky Family Ltd. Partnership v. Price Waterhouse* LLP, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001). Additionally, courts have recognized that an award of one-third, or more, of the common fund is typical. *Nelson v. Proxemics Consulting, Inc.*, 1:15 Civ. 00175-JD-SLC, 2016 WL 1166003, at *2 (N.D. Ind. Feb. 18, 2016), report and recommendation adopted, 1:15 Civ. 175 JD, 2016 WL 1165757 (N.D. Ind. Mar. 24, 2016) (approving fees as a percentage of the fund); *Campbell*, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (same); *Teamsters Local Union No. 604,* 2004 WL 768658, *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon."). Fee awards in wage and hour cases in Illinois District Courts are consistent with the typical award of one-third or more. *See Rusin v. Chicago Tribune,* 12 C 1135, Dkt. 41-1 (N.D. Ill. June 26, 2013) (awarding one-third of common fund in IMWL unpaid overtime class action); *Beatty v. Capital One Financial Corp*., 12 Civ. 424, Dkt. 75 (N.D. Ill. Dec. 13, 2012) (awarding one-third of $3,200,000 common fund in FLSA opt-in

settlement); *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 598-99 (N.D. Ill. 2011) (awarding plaintiffs' counsel 33.33% of the settlement fund and collecting cases showing that 33.33% "of the settlement fund is within the reasonable range").

Similarly, Plaintiffs' Counsel's attorneys' fees request is consistent with decisions from across the country that award one-third in wage-and-hour settlements. *See*, *Flores v. Swift Transportation Co.,* 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding plaintiffs' counsel 1/3 of the settlement fund for Hybrid FLSA and Rule 23 Class Action wage and hour case); *deMunecas v. Bold Food, LLC*, 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D.N.Y. Aug. 23, 2010) (awarding plaintiffs' counsel one-third of settlement fund); *Rotuna v. West Customer Management Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third); *Clark v. Ecolab Inc.*, 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D. N.Y. May 11, 2010) (one-third); *Dillworth v. Case Farms Processing, Inc.*, 5:08 Civ. 1694, 2010 WL 776933, *7-8 (N.D. Ohio March 8, 2010) (one-third); *Khait v. Whirlpool Corp.*, 06-6381 (ALC), 2010 WL 2025106, *1, *8 (E.D.N.Y Jan. 20, 2010) (33%); *Stefaniak v. HSBC Bank USA, N.A.*, 05 Civ. 720, 202008 WL 7630102, *3 (W.D. N.Y. June 28, 2008) (33%).

Courts across the country also regularly grant fee requests in excess of thirty-three percent of a settlement common fund. S*ee, e.g.*, *Adeva v. Intertek USA Inc.*, *et al.*, 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) (awarding class 34% of the class settlement fund in a wage-and-hour case); *Slagel v. State Farm Mutual Auto Ins. Corp.*, 2008 WL 4093100 (Superior Court, Los Angeles County, California, July 17, 2008) (awarding 43.8% attorneys' fees); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D. N.Y. 2005) (awarding

attorneys' fees of 38% of the fund in FLSA and NYLL case); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (awarding 38% of the fund in securities fraud class action), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Based upon the negotiated fee agreement in this case, the typical percentage of compensation in similar cases in this market, the risk Plaintiffs' Counsel undertook in engaging in this litigation, the quality of legal services rendered, the uncertainty of recovery and the results obtained, Plaintiffs' Counsel is entitled to a reasonable attorneys' fees award of one-third of the gross settlement.

## V.   COUNSEL'S COSTS AND EXPENSES

The FLSA permits recovery of reasonable costs. 29 U.S.C. § 216(b). Costs such as filing fees, copies, travel, and postage are typically recovered in class settlement cases, including FLSA wage and hour cases. *Belton,* 1:12 Civ. 01306-JES-BGC, Dkt. 122, p. 17; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (costs that are typically billed to paying clients in non-contingency matters are recoverable); *see also Edelen v. American Residential Services, LLC*, DKC 11–2744, 2013 WL 3816986, *15 (D. Md. July 22, 2013) (Court recognized "Examples of costs that have been charged include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying" in wage and hour class settlement); *Hernandez v. Merrill Lynch & Co., Inc.*, 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563, *10 (S.D. N.Y. March 21, 2013) (awarding reimbursement in wage and hour class settlement for "electronic research, court fees, court reporters, document hosting and retrieval, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees"); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 957 (E.D. Wis. 2003) (awarding costs for filing fees, service fees, postage, travel, depositions and photocopying).

Here, the Parties' Settlement and Release Agreement, the retainer agreements with the Named Plaintiffs, and the Consent to Sue forms provide that Plaintiffs' Counsel is entitled to recover its costs from the Settlement. *See Belton,* 1:12 Civ. 01306-JES-BGC, Doc. 122, p. 17. Plaintiffs' Counsel fronted costs for filing fees, admission to the court, postage, copies, Westlaw legal research, PACER research, travel to and from the mediation, and transportation. Accordingly, Plaintiffs' Counsel requests approval of their reimbursement of costs and expenses.[4] Dunn Dec. ¶ 40.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court define the composition of the Plaintiff class vis the Non-Participants, dismiss the relevant Non-Participants from the Plaintiff class, and thereafter approve the agreed upon Settlement and Release Agreement, including the allocations to the Plaintiffs, the service awards, and the attorneys' fees and costs.

Dated: October 14, 2016                        Respectfully Submitted,

                                               s/ Matt Dunn
                                               Matt Dunn
                                               GETMAN & SWEENEY, PLLC
                                               9 Paradies Lane
                                               New Paltz, NY 12561
                                               Telephone: (845) 255-9370
                                               Fax:    (845) 255-8649
                                               Email: mdunn@getmansweeney.com

                                               Attorneys for Plaintiffs

---

[4] Actual costs are higher than the amount sought here. Because Plaintiffs' Counsel informed each Plaintiff of a lower amount in costs, Plaintiffs did not change the amount in this motion.