E-FILED
Friday, 14 October, 2016  09:53:31 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT  2

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT ("**Agreement**") is entered by and among ALANDO SMITH ("**Smith**"), MAURICE HARRIS-BALL ("**Harris**"), both in their individual and representative capacities, and the conditionally-certified class of 75 OPT-IN MEMBERS ("**Opt-Ins**") in their individual capacities, whom Smith and Harris have represented in the matter of Smith/Harris v. Alamo and State Farm, *et al.* pending in the U.S. District Court for the Central District of Illinois under Case No. 13-cv-01481-JES-JEH (the "Lawsuit") on the one hand; and the named Defendants in the Lawsuit on the other hand:  MESSRS. PETER PERRINE ("**Perrine**"), THORLIN LEE ("**Lee**"), and DAVID SERFASS ("**Serfass**"), in their individual capacities as well as on behalf of their former business, ALAMO CLAIM SERVICE ("**Alamo**"); CIS ALAMO, LLC ("**CIS**"); and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("**State Farm**").

### DEFINITIONS

A.    Unless otherwise specified in this Agreement, Smith, Harris, and the Opt-Ins are collectively referred to herein as the "**Plaintiffs**" and singularly as a "**Plaintiff**."  A list of all Plaintiffs is attached hereto as Exhibit 1.

B.    Unless otherwise specified in this Agreement, the term "**Defendants**" collectively includes Messrs. Perrine, Lee, and Serfass; Alamo; CIS; and State Farm.

C.    The term "**Effective Date**" means as follows:  (1) with respect to Alamo and CIS, the date that this Agreement is approved by the Court where the Lawsuit is pending; and (2) with respect to State Farm, through and including the last date that each Plaintiff provided services to State Farm through Alamo or CIS.

D.    The term "**Parties**" collectively means all Plaintiffs and all Defendants, and singularly the term "**Party**" means each of them.

E.    The term "**Releasees**" collectively means all of the following separate persons and entities as to each of the Defendants:

    1.    The "**Alamo Releasees**" include Messrs. Perrine, Lee, and Serfass; their business named Perrine Lee and Serfass, Inc. formerly d/b/a Alamo Claim Service, its subsidiaries and affiliates, as well as their officers, directors, shareholders, agents, employees, insurers, attorneys, related entities, successors, and assigns;

    2.    The "**CIS Releasees**" include CIS Alamo, LLC n/k/a CIS Claim Services, LLC, its subsidiaries and affiliates, and their related entities (including but not limited to The CIS Group of Companies, LLC and its subsidiary and related companies), as well as each of their respective officers, directors, shareholders, members, owners, agents, employees, insurers, attorneys, successors, and assigns; and

    3.    The "**State Farm Releasees**" include State Farm Mutual Automobile Insurance Company, its subsidiaries and affiliates as well as their officers, directors, shareholders, agents, employees, insurers, attorneys, related entities, successors, and assigns.

    F.    The term "**Settlement Administrator**" means Simpluris, Inc., Class Action Settlement Administration, 3176 Pullman Street, Suite 123, Costa Mesa, California 92626, which was selected by Plaintiffs' counsel, with the approval of Defendants' counsel.

## RECITALS

1.    Smith and Harris filed the Lawsuit against Defendants, asserting claims under 29 U.S.C. Section 216(B) of the Fair Labor Standards Act ("FLSA"), which the Court conditionally certified as a collective action on March 31, 2015.

2.    The Opt-Ins filed "Consent to Sue" forms to participate in the Lawsuit as additional plaintiffs.

3.    Defendants filed answers denying the material allegations in the Plaintiffs' Complaint, including all amendments thereto.

4.    In the Lawsuit, Alamo filed a motion to amend its answer to assert a counterclaim against certain of the Plaintiffs who formerly settled claims with Alamo, contending that their releases barred new claims against Alamo and entitled Alamo to additional monetary relief, all of such Alamo assertions the relevant Plaintiffs were expected to deny.

5.    On February 18, 2016, the Parties mediated all claims at issue in the Lawsuit, and were able to reach agreement in principle to settle all of the claims raised or that could have been raised in the Lawsuit, the terms of which are now hereby memorialized in this Agreement.

6.    Defendants deny, and continue to deny (i) the allegations in the Lawsuit; (ii) liability for violations for the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Section 201 et seq., or any other law; and (iii) that any wages or damages are owed to the Plaintiffs. Further, the Parties recognize that the Plaintiffs need to arrive at an equitable formula for allocating the Settlement Funds among them, and nothing in the method of calculating the allocation of the Settlement Fund among the Plaintiffs, as the Plaintiffs have allocated in Exhibit 2, is or shall be construed as an admission by any of the Defendants that any of the Plaintiffs are owed wages or overtime or damages of any kind or in any amount including those reflected individually or collectively in Exhibit 2, or that any of the Plaintiffs should have been designated or compensated as employees rather than independent contractors. Nonetheless, without admitting or conceding any liability or damages, and to avoid the burden, expense and uncertainty of continuing the Lawsuit, the Parties agree to settle the Lawsuit on the terms and conditions set forth in this Agreement.

7.    The Parties recognize the outcome in the Lawsuit is uncertain, and achieving a final result through litigation requires additional risk, discovery, time and expense.

8.      In order to determine how best to serve the interest of all of the Plaintiffs, Smith and Harris, along with Plaintiffs' counsel, have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit.  After balancing the benefits of settlement with the costs, risks, and delay of continued litigation, Smith, Harris, and Plaintiffs' counsel believe this Agreement, inclusive of the allocations set forth in Exhibit 2, serves the best interests of all of the Plaintiffs and represents a fair, reasonable and adequate resolution of the Lawsuit.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the provisions, covenants and mutual promises contained in this Agreement, the Parties hereby agree as follows:

1.      <u>Plaintiffs' Execution of Agreement</u>.  Smith and Harris execute this Agreement on behalf of themselves, as well as on behalf of all Plaintiffs.  Each of the Opt-Ins also execute the "Settlement and Release Agreement Acknowledgment" attached hereto as Exhibit 3 to acknowledge his/her agreement to the terms of this Agreement (including but not limited to his/her releases of Defendants and other obligations herein), as well as his/her willingness to accept their respective individual recovery amounts allocated by their counsel as consideration for this Agreement, which amounts will be provided in advance to each of them before they sign their respective acknowledgements.

2.      <u>Confidentiality</u>.  Except as expressly set forth in this paragraph, the Parties agree that the monetary terms of this Agreement (specifically, the Settlement Amount or any individual or collective description thereof that allows the recipient of the communication to fairly calculate or determine any individual or collective amounts paid hereunder and all other terms set forth in paragraphs 3 and 4 of this Agreement) shall be confidential, and the Parties and their counsel shall not disclose said amount or terms to anyone, including, but not limited to, past, present and future employees of, or contractors to, any of the Defendants, unless directed to do so by a court of law or directed by a lawful subpoena, after giving notice of such proceedings to the other relevant party to enable the other party a reasonable opportunity to timely object to the requested disclosure. In order to present this Agreement to the Court for approval, counsel for the Parties agree to file, concurrently with the Motion for Approval of Settlement, a motion to seal all references to the "Settlement Amount" (as defined in paragraph 3 below) being paid and allocated herein.  Defendants' counsel is responsible for drafting and filing the motion to seal, to be coordinated with Plaintiffs' filing of the Motion for Approval of Settlement.

Notwithstanding the foregoing prohibition, the Parties may divulge the contents of this Agreement only to their respective attorneys, tax preparers, spouse, officers, and/or (if relevant and in compliance with the terms of this paragraph) in an administrative hearing or court proceeding. Any limited disclosure of the monetary amount or terms consistent with this paragraph shall include informing the recipient that the terms of this Agreement are confidential and that the recipient is prohibited from disclosing the terms of this Agreement to any person. The Plaintiffs specifically recognize that the terms of this paragraph are material, and that a violation of them constitutes a breach of this Agreement.

{01141462- }                              3

3.   <u>Payment Terms and Consideration</u>. In consideration for the promises in this Agreement, and within ten (10) days after the expiration of the thirty (30) day appeal period following the Court's final approval of the terms of this Agreement and the entry of the Judgment of Dismissal, Alamo shall deposit with the Settlement Administrator the gross sum of ████ ████████████ (████████████) ("**Settlement Amount**") in full resolution of all of Plaintiffs' claims, including attorneys' fees and costs, excepting only the capped costs associated with the Settlement Administrator as set forth in paragraph 4 below. No monies will be paid to any Plaintiff by the Settlement Administrator until after the Court has approved the settlement and the Lawsuit has been dismissed with prejudice.

A.   **Tax Treatment.**  All monies paid hereunder to any Plaintiff shall be paid and reported as follows:  (i) asserted "wages," as Plaintiffs' counsel has allocated on Exhibit 2, on an IRS Form W-2, and for which Alamo will be responsible for paying the employers' share of employer-paid and due taxes on the W-2 portions of this Settlement, including FICA, FUTA, and state unemployment in amounts determined by the Settlement Administrator (without any admission that Alamo or any of the other Defendants was an "employer"); and (ii) asserted "liquidated damages," as Plaintiffs' counsel has allocated on Exhibit 2, on an IRS Form 1099.  In addition, all payments to Plaintiffs' counsel for fees and costs will be reported on an IRS Form 1099 sent directly to Plaintiffs' counsel.  The Settlement Administrator shall indemnify and hold Plaintiffs harmless from and against claims which may be made by the Internal Revenue Service ("IRS") against any Plaintiff for any amount which the IRS claims represents FICA contributions owed by Alamo or any other tax liability of Alamo associated with the payments set forth herein.  This limited indemnity expressly excludes any claims which may be brought against any Plaintiff for her or her own income tax liability or his or her own FICA contribution.

Each Plaintiff and his/her counsel agree that the issuance of a payment characterized as wages and subject to W-2 withholding shall not be admissible in any proceeding or used in any manner to support an argument that Plaintiff or any other individual should have been classified as an employee during a time period that the Releasees classified/considered him/her as an independent contractor.

B.   **Allocation of Amounts to Plaintiffs.**  Each Plaintiff shall be allocated his or her share of the Settlement Amount, and the respective W-2 and liquidated damages portions thereof in advance of, and as part of, their respective executions of this Agreement as contained in Exhibit 3. Plaintiffs' counsel shall be solely responsible for the determination of all allocations to each Plaintiff.

C.   **Attorneys' Fees and Costs.**  The Settlement Amount being paid herein includes Plaintiffs' attorneys' fees and costs.  The settlement payments not in dispute will be distributed to Plaintiffs pursuant to Exhibit 2 irrespective of any ruling or appeal of fees and costs, and Plaintiffs' counsel shall receive only the amount that the Court approves for attorneys' fees and costs.  Plaintiffs' counsel will petition the Court for a determination of the percentage (or amount) of the Settlement Amount which shall be paid to Plaintiffs' counsel as a reasonable fee. Defendants agree not to oppose Plaintiffs' counsel's application for attorneys' fees in an amount up to one third (1/3) of the

Settlement Amount, plus costs.  The outcome of any proceeding related to Plaintiffs' counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement.

Defendants will be provided notice of any appeal taken by Plaintiffs' counsel concerning attorneys' fees and costs.  Any appeal by Plaintiffs' counsel concerning the Court's determination of attorneys' fees and costs will not impact this Agreement, including without limitation, its release provisions.  Further, this Agreement and its enforceability is not contingent upon the Court's approval of Plaintiffs' counsel's petition for fees and costs, nor will any appeal of attorneys' fees delay settlement payments to the Plaintiffs.

D.      **Service Payments.** Smith and Harris each may receive a Service Payment in recognition of their efforts in bringing the Lawsuit and the risks they shouldered in doing so, the amount of which shall be determined in the sole discretion of Plaintiffs' counsel. Defendants agree not to oppose any reasonable application for Service Payments. The Service Payments are included in the Settlement Amount.  All Service Payments will be reported on an IRS Form 1099.  The outcome of the Court's ruling on the application for Service Payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement.

E.      **No Tax Advice.** Except for the FICA, FUTA, and state unemployment taxes being paid by Alamo on the asserted "wage" portion of the payments reflected on Exhibit 2, Plaintiffs shall be solely responsible for the reporting and payment of any federal, state and/or local income taxes or other taxes or any other withholdings, if any, owed on any of the monies or benefits conveyed to them under this Agreement.  Defendants make no representations as to the taxable nature of the amounts or sums received by the Plaintiffs, the attorneys' fees, costs or expenses to Plaintiffs' counsel, or the Service Payments to Smith and Harris.  Each of the Plaintiffs is responsible for obtaining his/her own tax advice and paying his/her own liabilities at his/her own expense.

F.      **Uncashed Settlement Funds Revert to Unclaimed Property.**  Any uncashed checks remaining one hundred twenty (120) days after the Court's order approving the settlement shall be paid over by the Settlement Administrator to the unclaimed property division of the last known state of residence of each respective payee.  Any failure of any Plaintiff to timely negotiate checks received pursuant to this Agreement that results in a reversion shall not negate or otherwise affect the enforceability of any of the terms of this Agreement as to that Plaintiff, including but not limited to the releases and covenants not to sue granted herein.

4.      Settlement Administrator.   The settlement will be administered by the Settlement Administrator pursuant to the procedures set forth in Exhibit 4.   The Settlement Administrator shall provide weekly summaries of activity to counsel for Plaintiffs and Alamo.    All communications with the Settlement Administrator with respect to any Plaintiff shall use the employee identification number provided by Plaintiffs' counsel to Alamo. Alamo will assume the costs of the Settlement Administrator up to a maximum amount of ████████████ (████████) in addition to the Settlement Amount.  Thereafter, the additional cost, if any, shall be borne by Plaintiffs.

{01141462- }                                          5

5. <u>Plaintiffs' Waiver and Release of All Claims and Causes of Action</u>.

A. <u>Time Period of Release of Claims and Causes of Action</u>: (1) For the releases granted by Plaintiffs in favor of the State Farm Releasees as part of this settlement, Plaintiffs release their claims and causes of action only for the period of time that Plaintiffs worked in State Farm offices through Alamo or CIS. (2) For the releases granted by Plaintiffs in favor of the Alamo Releasees and the CIS Releasees as part of this settlement, Plaintiffs release their claims and causes of action for the period of time through the date that this Agreement is approved by the Court where the Lawsuit is pending.

B. <u>Acknowledgment of Fair Settlement for All Plaintiffs; Breadth of Release</u>: Plaintiffs acknowledge and agree that they have resolved the Lawsuit and settled all of Plaintiffs' claims for wages and any other claim which could be brought by any of them against the Releasees under the FLSA and under any federal, state or local statute, law, regulation, ordinance or common law arising out of or in connection with the engagement of Plaintiffs by, on behalf of, or through the Alamo Releasees and/or the CIS Releasees. Plaintiffs also agree that the terms of the settlement set forth in this Agreement are fair, reasonable and equitable, and that they have entered this Agreement of their own free will and after the ability to consult with their counsel, even if they elected not to consult with their counsel. Except for any claims already filed and pending in an agency or court of law separate from the Lawsuit and for which any of the Defendants have received service of process prior to February 18, 2016, it is the intent of the Parties that this Agreement shall resolve: (1) any and all claims of any Plaintiff against Alamo and CIS as more particularly described herein through the applicable Effective Date, and (2) all unfiled claims of any Plaintiff against State Farm while Plaintiffs worked in State Farm offices through Alamo or CIS.

C. <u>Plaintiffs' General Waiver and Release of All Claims Against Each of the Defendants</u>: For and in consideration of the promises herein, **EACH AND EVERY PLAINTIFF TO THIS LAWSUIT FULLY AND GENERALLY REMISES, WAIVES, RELEASES, AND FOREVER DISCHARGES ALL OF THE RELEASEES** from all actions, causes of action, claims and demands whatsoever, whether or not well founded in fact or in law, and from all suits, debts, sums of money, accounts and reckonings, covenants, contracts, controversies, agreements, promises or judgments whatsoever, whether in law or in equity, **THAT ANY OF THE PLAINTIFFS HAVE EVER HAD, NOW HAVE, OR THAT THEIR EXECUTORS OR ASSIGNS HEREAFTER MAY HAVE AGAINST THE RELEASEES FROM ANY AND ALL MANNER OF CLAIMS, DEMANDS, CAUSES OF ACTION, OBLIGATIONS, DAMAGES, OR LIABILITIES WHATSOEVER OF EVERY KIND AND NATURE, AT LAW OR IN EQUITY, KNOWN OR UNKNOWN, AND WHETHER OR NOT DISCOVERABLE, THAT HE OR SHE HAS OR MAY HAVE OR MAY HAVE EVER HAD AGAINST ANY OF THE RELEASEES FROM THE BEGINNING OF TIME UNTIL THE EFFECTIVE DATE OF THIS AGREEMENT**, including but not limited to:

(1) claims made or that could have been made in the Lawsuit, including but not limited to any and all claims for wages that they have or may have ever had against the Alamo Releasees and/or against the CIS Releasees, including but not limited to all possible claims against any of them under the Fair Labor Standards Act, any state wage law for classification as independent contractors or employees, and for unpaid minimum wages, overtime compensation, or any other form of compensation by contract or through employment that they have had at any time in the past up to the Effective Date of this Agreement;

(2) any and all claims arising out of or in connection with the engagement of Plaintiffs by, on behalf of, or through Alamo or CIS, including but not limited to any dispute concerning any Plaintiffs' designation and status as an independent contractor;

(3) any claims based on discipline, terms and conditions of employment, employment benefits, and discharge, including without limitation, claims for violation of civil rights arising under any federal, state or local statute, law, regulation, or ordinance including without limitation, the Americans with Disabilities Act (42 U.S.C. §12101 *et seq.*), Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §1981 and 1981(a), the Age Discrimination in Employment Act, other acts of employment discrimination, harassment and/or retaliation under any other federal, state or local statute, law, regulation, or ordinance;

(4) any claims relating to Plaintiffs' work for, on behalf of, or through Alamo and/or CIS at any time, arising under the Fair Labor Standards Act (29 U.S.C. Section 201 *et seq*) and any minimum wage, overtime compensation, or wage payment laws under any state of the United States or any other federal, state or local statute, law, regulation, ordinance, or common law;

(5) recovery of attorneys' fees or costs outside of that which is provided in this Agreement;

(6) any claims based in tort, contract, or common law, including without limitation those for retaliatory discharge, breach of contract, promissory estoppel, defamation, interference with contractual or advantageous economic relations, fraud or misrepresentation, claims for unemployment benefits, and claims made under any laws, statutes, ordinances or other regulations of the United States, or any state, county, city, town, village or municipality;

(7) any and all claims arising from or under any other disagreement or matter concerning any of Plaintiffs and any of the Defendants up to and including the Effective Date of this Agreement; and

(8) should any governmental agency seek relief on any individual Plaintiff's behalf or on Plaintiffs' behalf collectively under any statute or ordinance for any claims which were or could have been asserted in the Lawsuit, Plaintiffs

acknowledge here that they are waiving all rights to recover money or other individual relief in connection with any other charge, claim or complaint, whether filed by themselves, an agency, or anyone else.

D.    Plaintiffs' Release of Unknown Claims: Plaintiffs agree that this Agreement conveys from them a complete and final settlement, and each of them specifically affirms their intention to release not only those claims against the Alamo Releasees and CIS Releasees about which they know, but also those claims about which they do not know. Plaintiffs stipulate that the consideration provided pursuant to this Agreement, including that described in paragraph 3, is in full and complete satisfaction of any and all claims related to or arising out of the Plaintiffs' engagement with Alamo and/or CIS, up to the Effective Date of this Agreement. Plaintiffs understand that consideration provided pursuant to this Agreement, including that described in paragraph 3, is in full and complete satisfaction of any wage and hour claims related to or arising out of the Plaintiffs' engagement with Alamo and/or CIS, up to the Effective Date of this Agreement.

6.    Defendants' Release of Counterclaim.  For and in consideration of the promises herein, each of the Defendants does hereby release, with prejudice, any and all claims raised or that could have been raised against any of the Plaintiffs in the Counterclaim filed in the Lawsuit by Alamo.  Other than the Counterclaim that is being dismissed as part of settling the Lawsuit, Alamo hereby states that it is not aware of any other claims that Alamo may have against any of the Plaintiffs.

7.    Covenant Not to Sue; Related Representations and Warranties by Counsel for Plaintiffs.  In addition to waiving and releasing the claims covered by the Waiver and Release of All Claims contained in paragraph 5, Plaintiffs shall not file any new suits, charges or other complaints against the Releasees based on the claims released herein for any claim or issue that arose during their engagement with Alamo and/or CIS up to the Effective Date of this Agreement. The Parties agree that any such lawsuit, charge, or other complaints, if filed, shall be promptly dismissed with prejudice. Also as part of this Covenant, and as inducement for Alamo to dismiss and waive the rights under its Counterclaim, *counsel for the Plaintiffs affirmatively represents and warrants* to Alamo and CIS that, other than the Lawsuit which is the subject of this settlement, the Getman & Sweeney law firm is not presently in receipt of any retainer from, and is not otherwise representing, anyone who is pursuing or seeking to pursue any claims against the Alamo Releasees or the CIS Releasees.  Further, in the event that the Getman & Sweeney law firm hereafter accepts representation for any claims against the Alamo Releasees or the CIS Releasees, it agrees that it will not: (a) file any claim or lawsuit against either of said Releasees until after such time that it provides advance notice detailing any such claim to the applicable Releasee(s) and affords the responding party(ies) a reasonable opportunity to resolve the same, not less than thirty (30) days, and/or (b) initiate any putative collective or class action claims against the Alamo Releasees or the CIS Releasees unless the 30-day advance notice and resolution opportunity provided in this paragraph has first been followed. From the time that Getman & Sweeney provides advance, detailed notice of a claim to the Alamo or CIS Releasees, and for as long as the 30-day resolution period (or such other period as the parties may otherwise thereafter agree in writing) shall last, any applicable statute of limitations under the Fair Labor Standards Act and/or state wage laws shall be tolled. The Plaintiffs and their counsel specifically

recognize that the terms of this paragraph 7 are material, and that a violation of this paragraph constitutes a breach of this Agreement.

8.     <u>Non-Disparagement</u>.  The Plaintiffs on the one hand, and the Defendants on the other hand, shall not disparage each other in any public forum or in any communications with third parties. In all communications with third parties, the Parties to this Agreement shall refer to the others in neutral or amicable tones. The Parties specifically recognize that the terms of this paragraph are material, and that a violation of them constitutes a breach of this Agreement.

State Farm agrees that no Plaintiff will be placed on State Farm's do not rehire ("DNR") list due to the Lawsuit or this Agreement.  State Farm also agrees that for any Plaintiff placed anew on its DNR list after February 18, 2016, State Farm's counsel will, upon request from Plaintiffs' counsel, provide the reason for the particular Plaintiff's new placement on the DNR list.

9.     <u>No Right of Future Contract or Employment is Created</u>:  Plaintiffs acknowledge and agree that Defendants have denied any wrongdoing or liability in the Lawsuit, and that the Settlement Amount is being paid to buy peace with the Plaintiffs.  The filing of the Lawsuit, as well as entry of this settlement, does not constitute any admission of liability by any of the Releasees, nor does it create rights in favor any Plaintiff for entitlement to work for or on behalf of Alamo or CIS hereafter. Consequently, Plaintiffs acknowledge and agree that as a result of this Lawsuit they are not entitled to receive future contracts for work or employment from Alamo or CIS, that neither Alamo or CIS is obligated to enter into any contract or employment relationship with any Plaintiff, and that their failure to so contract with or hire any Plaintiff, in and of itself, shall not create any liability on the part of Alamo or CIS.  In the event that any Plaintiff seeks to present a subsequent claim against Alamo or CIS for not contracting with or hiring him or her on the grounds that this Lawsuit or settlement created such a right, the Plaintiff affirmatively agrees that he/she shall suffer no damages from any refusal by Alamo or CIS to contract with or hire him/her, and any such claims must be promptly dismissed with prejudice. Notwithstanding the foregoing, Alamo or CIS is free to contract with or employ any Plaintiff herein without waiving its rights under this paragraph to not do so as to any other Plaintiff, and any such contract or employment also shall not waive the rights of Alamo or CIS to not contract with or employ the same or any other person thereafter.

10.    <u>Dismissal of Lawsuit and Counterclaim with Prejudice</u>.  The Parties agree that they will cooperate in the process of obtaining Court approval of the terms of this Agreement.  The Parties, through their respective counsel, shall file a stipulation to dismiss the Lawsuit, inclusive of the Counterclaim, with prejudice, promptly after the Court enters an order approving this Agreement.  It is intended that this Agreement shall constitute full and final settlement of all claims between and among the Parties, including all of those which were or could have been alleged in the Lawsuit, and that the dismissal with prejudice shall be binding upon all of the Parties.

11.    <u>Litigation Expenses</u>. Except as otherwise provided in this Agreement, each Party shall bear his, her or its own expenses related to the Lawsuit.

12. <u>Opportunity to Consider and Consult Counsel</u>. Plaintiffs acknowledge and affirm that they have been provided a reasonable time period to consider the terms of this Agreement, and have been represented by counsel during the negotiation of the terms and conditions of this Agreement. Plaintiffs further acknowledge that they have been given the opportunity to consult with their counsel concerning the terms and significance of this Agreement, including the release and waiver provisions herein, and it has been their sole choice and decision whether and to what extent to further consult with counsel prior to signing this Agreement or Exhibit 3 agreeing to the terms of this Agreement.

13. <u>Remedies for Breach</u>.  The Parties agree that a breach of this Agreement can result in the breaching party(ies) having to return any monies paid to them under this Agreement.

14. <u>Amendment and Waiver of Breach</u>.  No amendment or modification of this Agreement shall be valid or binding upon any Party hereto unless made in writing and signed by each affected Party.  Any waiver by any Party of the breach of any provision of this Agreement by any of the other Parties shall not operate or be construed as a waiver of any subsequent breach by the same breaching Party or any other Party.

15. <u>Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the benefit of the heirs, executors and legal representatives of all Plaintiffs, and the transferees, successors and assigns of any of the Defendants.

16. <u>Severability</u>.  To the extent a court of competent jurisdiction holds that any portion of this Agreement is either invalid or legally unenforceable, the Parties agree that the remaining portions shall not be affected and shall be given full force and effect.  Additionally, if any of the provisions of this Agreement ever are adjudicated to be unenforceable under applicable law, then any court of competent jurisdiction shall strike, to the minimum extent necessary, such severable portions of this Agreement as are necessary to make this Agreement, when taken as a whole, enforceable in accordance with the Parties' intent.

17. <u>Venue and Choice of Law</u>.  Should any Party be required to bring an action to enforce this Agreement, it shall be brought in the state or federal courts located the Central District of Illinois, and federal and Illinois law shall govern the enforcement of this Agreement, whichever is applicable to the forum.

18. <u>Headings</u>.  The headings contained in this Agreement are for convenience of reference only, are not intended to be a part of this Agreement, and shall not be construed to define, modify, alter, or describe the scope or intent of any of the terms, covenants or conditions of this Agreement.

19. <u>Required Signatures</u>.  This Agreement shall only become enforceable after the execution of this Agreement by all Plaintiffs, and delivery of this signed Agreement and Acknowledgments to counsel for Defendants, each of whom must also thereupon execute this Agreement to cause it become effective, pending court approval.

20. <u>Counterparts</u>. The Parties agree that this Agreement may be signed in counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.

21.     <u>Delivery of Signed Agreements</u>.   Upon receipt of this executed Agreement and Acknowledgements from Plaintiffs, Plaintiffs' counsel shall forward the same to counsel of record for Defendants. Upon receipt of this executed Agreement from Defendants, Defendants' counsel shall forward the same to counsel of record for Plaintiffs.

22.     <u>Entire Agreement</u>.   This Agreement, including its exhibits, contains all of the terms agreed upon by the Plaintiffs on the one hand, and Defendants on the other hand, with respect to the subject matter hereof, superseding all prior agreements, arrangements and communications between the Plaintiffs and Defendants dealing with such subject matter, whether oral or written.

**<u>CAUTION</u>:   READ BEFORE SIGNING.   By signing this Agreement, each signatory represents and warrants having read this Agreement, consulting with counsel as deemed appropriate, understanding its terms and effect, and entering into it as an act of free will and without any improper or undue influence by anyone else.**

<u>FOR PLAINTIFFS</u>:


_____          _____
Alando Smith, Individually and              Maurice Harris-Ball, Individually and
on behalf of all Plaintiffs                    on behalf of all Plaintiffs

AGREED & SO APPROVED:


_____          DATE:_____
Matt Dunn, Getman & Sweeney
Counsel for Plaintiffs
mdunn@getmansweeney.com

[TWO ADDITIONAL SIGNATURE PAGES FOLLOW]

<u>FOR ALAMO/CIS/INDIVIDUAL DEFENDANTS</u>:


_____  _____

Peter Perrine, Individually and                Thorlin Lee, Individually and
on behalf of Alamo Claim Service                on behalf of Alamo Claim Service


_____

David Serfass, Individually and
on behalf of Alamo Claim Service


CIS CLAIM SERVICE, LLC,
f/k/a CIS ALAMO, LLC


By:_____
        Its Authorized Representative

Printed:_____

Title:_____


SO APPROVED:


_____        DATE:_____

Kathleen Hart
Riley Bennett & Egloff, LLP
Counsel for Perrine, Lee, Serfass,
Alamo, and CIS
khart@rbelaw.com


[ONE ADDITIONAL SIGNATURE PAGE FOLLOWS]

FOR DEFENDANT STATE FARM:

STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY

By:_____
         Its Authorized Representative

Printed:_____

Title:_____

SO APPROVED:

_____          DATE:_____
Doug Hart
Sidley Austin
Counsel for State Farm
dhart@sidley.com

21.     Delivery of Signed Agreements.   Upon receipt of this executed Agreement and Acknowledgements from Plaintiffs, Plaintiffs' counsel shall forward the same to counsel of record for Defendants. Upon receipt of this executed Agreement from Defendants, Defendants' counsel shall forward the same to counsel of record for Plaintiffs.

22.     Entire Agreement.  This Agreement, including its exhibits, contains all of the terms agreed upon by the Plaintiffs on the one hand, and Defendants on the other hand, with respect to the subject matter hereof, superseding all prior agreements, arrangements and communications between the Plaintiffs and Defendants dealing with such subject matter, whether oral or written.

**CAUTION:  READ BEFORE SIGNING.  By signing this Agreement, each signatory represents and warrants having read this Agreement, consulting with counsel as deemed appropriate, understanding its terms and effect, and entering into it as an act of free will and without any improper or undue influence by anyone else.**

FOR PLAINTIFFS:

_____
Alando Smith, Individually and
on behalf of all Plaintiffs

_____
Maurice Harris-Ball, Individually and
on behalf of all Plaintiffs

AGREED & SO APPROVED:

_____
Matt Dunn, Getman & Sweeney
Counsel for Plaintiffs
mdunn@getmansweeney.com

DATE: 6/22/2016

[TWO ADDITIONAL SIGNATURE PAGES FOLLOW]

21.    Delivery of Signed Agreements.   Upon receipt of this executed Agreement and Acknowledgements from Plaintiffs, Plaintiffs' counsel shall forward the same to counsel of record for Defendants. Upon receipt of this executed Agreement from Defendants, Defendants' counsel shall forward the same to counsel of record for Plaintiffs.

22.    Entire Agreement.  This Agreement, including its exhibits, contains all of the terms agreed upon by the Plaintiffs on the one hand, and Defendants on the other hand, with respect to the subject matter hereof, superseding all prior agreements, arrangements and communications between the Plaintiffs and Defendants dealing with such subject matter, whether oral or written.

**CAUTION:   READ BEFORE SIGNING.  By signing this Agreement, each signatory represents and warrants having read this Agreement, consulting with counsel as deemed appropriate, understanding its terms and effect, and entering into it as an act of free will and without any improper or undue influence by anyone else.**

FOR PLAINTIFFS:

_____
Alando Smith, Individually and
on behalf of all Plaintiffs

AGREED & SO APPROVED:

_____
Matt Dunn, Getman & Sweeney
Counsel for Plaintiffs
mdunn@getmansweeney.com

_____
Maurice Harris-Ball, Individually and
on behalf of all Plaintiffs

DATE: _____

[TWO ADDITIONAL SIGNATURE PAGES FOLLOW]

21.    <u>Delivery of Signed Agreements</u>.    Upon receipt of this executed Agreement and Acknowledgements from Plaintiffs, Plaintiffs' counsel shall forward the same to counsel of record for Defendants. Upon receipt of this executed Agreement from Defendants, Defendants' counsel shall forward the same to counsel of record for Plaintiffs.

22.    <u>Entire Agreement</u>.    This Agreement, including its exhibits, contains all of the terms agreed upon by the Plaintiffs on the one hand, and Defendants on the other hand, with respect to the subject matter hereof, superseding all prior agreements, arrangements and communications between the Plaintiffs and Defendants dealing with such subject matter, whether oral or written.

**<u>CAUTION</u>:   READ BEFORE SIGNING.   By signing this Agreement, each signatory represents and warrants having read this Agreement, consulting with counsel as deemed appropriate, understanding its terms and effect, and entering into it as an act of free will and without any improper or undue influence by anyone else.**

<u>FOR PLAINTIFFS</u>:


_____                      _____
Alando Smith, Individually and                                    Maurice Harris-Ball, Individually and
on behalf of all Plaintiffs                                              on behalf of all Plaintiffs

AGREED & SO APPROVED:


_____                      DATE: _____
Matt Dunn, Getman & Sweeney                                            10-14-16
Counsel for Plaintiffs
mdunn@getmansweeney.com

[TWO ADDITIONAL SIGNATURE PAGES FOLLOW]

{01141462- }                                                11

FOR ALAMO/CIS/INDIVIDUAL DEFENDANTS:

*Peter E Perrine*

_____          _____
Peter Perrine, Individually and         Thorlin Lee, Individually and
on behalf of Alamo Claim Service        on behalf of Alamo Claim Service


_____
David Serfass, Individually and
on behalf of Alamo Claim Service


CIS CLAIM SERVICE, LLC,
f/k/a CIS ALAMO, LLC


By:_____
        Its Authorized Representative

Printed:_____

Title:_____


SO APPROVED:


_____          DATE:_____
Kathleen Hart
Riley Bennett & Egloff, LLP
Counsel for Perrine, Lee, Serfass,
Alamo, and CIS
khart@rbelaw.com


[ONE ADDITIONAL SIGNATURE PAGE FOLLOWS]

FOR ALAMO/CIS/INDIVIDUAL DEFENDANTS:

_____        _____
Peter Perrine, Individually and          Thorlin Lee, Individually and
on behalf of Alamo Claim Service          on behalf of Alamo Claim Service


_____
David Serfass, Individually and
on behalf of Alamo Claim Service


CIS CLAIM SERVICE, LLC,
f/k/a CIS ALAMO, LLC

By: _____
       Its Authorized Representative

Printed: _____

Title: _____


SO APPROVED:


_____          DATE:_____
Kathleen Hart
Riley Bennett & Egloff, LLP
Counsel for Perrine, Lee, Serfass,
Alamo, and CIS
khart@rbelaw.com


[ONE ADDITIONAL SIGNATURE PAGE FOLLOWS]

<u>FOR DEFENDANT STATE FARM</u>:

STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY

By: _____
      Its Authorized Representative

Printed: _Daniel E. Kinney_

Title: _Operation Vice President_

SO APPROVED:

_____         DATE: _10-14-16_

Doug Hart
Sidley Austin
Counsel for State Farm
dhart@sidley.com

{01141462- }            13

PDF created with pdfFactory trial version www.pdffactory.com

FOR ALAMO/CIS/INDIVIDUAL DEFENDANTS:


_____
Peter Perrine, Individually and
on behalf of Alamo Claim Service


_____
David Serfass, Individually and
on behalf of Alamo Claim Service


CIS CLAIM SERVICE, LLC,
f/k/a CIS ALAMO, LLC


By:_____
        Its Authorized Representative

Printed:_____

Title:_____


SO APPROVED:


_____
Kathleen Hart
Riley Bennett & Egloff, LLP
Counsel for Perrine, Lee, Serfass,
Alamo, and CIS
khart@rbelaw.com


_____
Thorlin Lee, Individually and
on behalf of Alamo Claim Service


DATE:_____


[ONE ADDITIONAL SIGNATURE PAGE FOLLOWS]

FOR ALAMO/CIS/INDIVIDUAL DEFENDANTS:

_____
Peter Perrine, Individually and
on behalf of Alamo Claim Service

_____
Thorlin Lee, Individually and
on behalf of Alamo Claim Service

_____
David Serfass, Individually and
on behalf of Alamo Claim Service

CIS CLAIM SERVICE, LLC,
f/k/a CIS ALAMO, LLC

By: _____
        Its Authorized Representative

Printed: _____

Title: _____

SO APPROVED:

_____
Kathleen Hart
Riley Bennett & Egloff, LLP
Counsel for Perrine, Lee, Serfass,
Alamo, and CIS
khart@rbelaw.com

DATE: _October 14, 2016_____

[ONE ADDITIONAL SIGNATURE PAGE FOLLOWS]

EXHIBIT 1

**Plaintiff Representatives:  Alando Smith and Maurice Harris-Ball**

**Opt-Ins:**

| | | | |
|---|---|---|---|
| 1. | Adams, Romona | 39. | Hicks, Jack |
| 2. | Amoko, Anessia | 40. | Howard Jr., Joseph C. |
| 3. | Anders, Latasha | 41. | Huddleston, Virgil Lee |
| 4. | Antoine, Andria | 42. | Johnson, Amber |
| 5. | Averhart, William P. | 43. | Johnson, George |
| 6. | Barton, William B. | 44. | Johnson, Jr., Sam A. |
| 7. | Bordelon, Tina | 45. | Kinder, Randy |
| 8. | Caffey, Samantha | 46. | Legington, Robert K. |
| 9. | Caldwell, Shannon | 47. | Liesmann, Jane |
| 10. | Cardenas, Lisa | 48. | Mann, Shawn |
| 11. | Carmouche-Lewis, Keisha | 49. | Maylor, Robert |
| 12. | Chapman, Moncherie Y. | 50. | Meadows-Taylor, Sonya |
| 13. | Chikos, James | 51. | Meekins, Tonya |
| 14. | Clark-Walker, Mahalia | 52. | Meyer, Deanne |
| 15. | Coleman, LaDawn (Stephens) | 53. | Mitchell, Jackie |
| 16. | Collins, Teresa | 54. | Moses, Merle |
| 17. | Cooper, Bridget | 55. | Pfeiffer, Tim |
| 18. | Corral, Heather | 56. | Rist, Jr., Charles E. |
| 19. | Creighton, III, Booker J. | 57. | Roberson, Arney |
| 20. | Dao, Daniel | 58. | Robinson, Billy D. |
| 21. | DeWan-Nash, Cathy | 59. | Schooling, Gena L. |
| 22. | Diaz, Jorge A. | 60. | Segerson, Phillip D. |
| 23. | Dillard, George P. | 61. | Short, David C. |
| 24. | Dunson, Deneen | 62. | Smith, Darrin |
| 25. | Durio, Gwendolyn | 63. | Smith, Terrence |
| 26. | Dye, Anita A. | 64. | Smith, Yvetta |
| 27. | Dyer, Racquel | 65. | Stewart, Francine |
| 28. | Espinosa, Michael R. | 66. | Sutton, Kelvin S. |
| 29. | Ferrara, Bethanie | 67. | Taylor, Patrick B. |
| 30. | Fox, Jennifer | 68. | Taylor, Yolanda E. |
| 31. | Francis, Linda | 69. | Torra, Wayne |
| 32. | Gamerdinger, Julie | 70. | Valdez, Gloria |
| 33. | Gilkey, Carol | 71. | Washington-Sutton, LaPatrick |
| 34. | Gindner, Kerstin | 72. | Wehunt, Larry |
| 35. | Gindner, Pia Magdalena | 73. | Wilcox, Kenneth |
| 36. | Glover, Bernadette | 74. | Williams, Jessica |
| 37. | Gray, Dianna D. | 75. | Williams, Michele |
| 38. | Hank, Andrew | | |

**Exhibit 2**

| First | First/Last | | | W2 (less applicable taxes) | | 1099 | Total |
|---|---|---|---|---|---|---|---|
| Romona | Romona Adams | | | $ | $ | | $ |
| Anessia | Anessia Amoko | | | $ | $ | | $ |
| Latasha | Latasha Anders | | | $ | $ | | $ |
| Andria | Andria Antoine | | | $ | $ | | $ |
| William | William P. Averhart | | | $ | $ | | $ |
| William | William B. Barton | | | $ | $ | | $ |
| Tina | Tina Bordelon | | | $ | $ | | $ |
| Samantha | Samantha Caffey | | | $ | $ | | $ |
| Shannon | Shannon Caldwell | | | $ | $ | | $ |
| Lisa | Lisa Cardenas | | | $ | $ | | $ |
| Keisha | Keisha Carmouche-Lewis | | | $ | $ | | $ |
| Moncherie | Moncherie Y. Chapman | | | $ | $ | | $ |
| James | James Chikos | | | $ | $ | | $ |
| Mahalia | Mahalia Clark-Walker | | | $ | $ | | $ |
| LaDawn | LaDawn (Stephens) Coleman | | | $ | $ | | $ |
| Teresa | Teresa Collins | | | $ | $ | | $ |
| Bridget | Bridget Cooper | | | $ | $ | | $ |
| Heather | Heather Corral | | | $ | $ | | $ |
| Booker | Booker J. Creighton, III | | | $ | $ | | $ |
| Daniel | Daniel Dao | | | $ | $ | | $ |
| Cathy | Cathy DeWan-Nash | | | $ | $ | | $ |
| Jorge | Jorge A. Diaz | | | $ | $ | | $ |
| George | George P. Dillard | | | $ | $ | | $ |
| Deneen | Deneen Dunson | | | $ | $ | | $ |
| Gwendolyn | Gwendolyn Durio | | | $ | $ | | $ |
| Anita | Anita A. Dye | | | $ | $ | | $ |
| Racquel | Racquel Dyer | | | $ | $ | | $ |
| Michael | Michael R. Espinosa | | | $ | $ | | $ |
| Bethanie | Bethanie Ferrara | | | $ | $ | | $ |
| Jennifer | Jennifer Fox | | | $ | $ | | $ |
| Linda | Linda Francis | | | $ | $ | | $ |

| | | | | | | |
|---|---|---|---|---|---|---|
| Julie | Julie Gamerdinger | | $ ■ | $ ■ | $ ■ | |
| Carol | Carol Gilkey | | $ ■ | $ ■ | $ ■ | |
| Kerstin | Kerstin Gindner | | $ ■ | $ ■ | $ ■ | |
| Pia | Pia Magdalena Gindner | | $ ■ | $ ■ | $ ■ | |
| Bernadette | Bernadette Glover | | $ ■ | $ ■ | $ ■ | |
| Dianna | Dianna D. Gray | | $ ■ | $ ■ | $ ■ | |
| Andrew | Andrew Hank | | $ ■ | $ ■ | $ ■ | |
| Maurice | Maurice Harris | | $ ■ | $ ■ | $ ■ | |
| Jack | Jack Hicks | | $ ■ | $ ■ | $ ■ | |
| Joseph | Joseph C. Howard Jr. | | $ ■ | $ ■ | $ ■ | |
| Virgil | Virgil Lee Huddleston | | $ ■ | $ ■ | $ ■ | |
| Amber | Amber Johnson | | $ ■ | $ ■ | $ ■ | |
| George | George Johnson | | $ ■ | $ ■ | $ ■ | |
| Sam | Sam A. Johnson, Jr. | | $ ■ | $ ■ | $ ■ | |
| Randy | Randy Kinder | | $ ■ | $ ■ | $ ■ | |
| Robert | Robert K. Legington | | $ ■ | $ ■ | $ ■ | |
| Jane | Jane Liesmann | | $ ■ | $ ■ | $ ■ | |
| Shawn | Shawn Mann | | $ ■ | $ ■ | $ ■ | |
| Robert | Robert Maylor | | $ ■ | $ ■ | $ ■ | |
| Sonya | Sonya Meadows-Taylor | | $ ■ | $ ■ | $ ■ | |
| Tonya | Tonya Meekins | | $ ■ | $ ■ | $ ■ | |
| Deanne | Deanne Meyer | | $ ■ | $ ■ | $ ■ | |
| Jackie | Jackie Mitchell | | $ ■ | $ ■ | $ ■ | |
| Merle | Merle Moses | | $ ■ | $ ■ | $ ■ | |
| Tim | Tim Pfeiffer | | $ ■ | $ ■ | $ ■ | |
| Charles | Charles E. Rist, Jr. | | $ ■ | $ ■ | $ ■ | |
| Arney | Arney Roberson | | $ ■ | $ ■ | $ ■ | |
| Billy | Billy D. Robinson | | $ ■ | $ ■ | $ ■ | |
| Gena | Gena L. Schooling | | $ ■ | $ ■ | $ ■ | |
| Phillip | Phillip D. Segerson | | $ ■ | $ ■ | $ ■ | |
| David | David C. Short | | $ ■ | $ ■ | $ ■ | |
| Darrin | Darrin Smith | | $ ■ | $ ■ | $ ■ | |
| Alando | Alando Smith | | $ ■ | $ ■ | $ ■ | |
| Terrence | Terrence Smith | | $ ■ | $ ■ | $ ■ | |
| Yvetta | Yvetta Smith | | $ ■ | $ ■ | $ ■ | |
| Francine | Francine Stewart | | $ ■ | $ ■ | $ ■ | |
| Kelvin | Kelvin S. Sutton | | $ ■ | $ ■ | $ ■ | |
| Patrick | Patrick B. Taylor | | $ ■ | $ ■ | $ ■ | |
| Yolanda | Yolanda E. Taylor | | $ ■ | $ ■ | $ ■ | |
| Wayne | Wayne Torra | | $ ■ | $ ■ | $ ■ | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Gloria | Gloria Valdez | | $ | ████ | $ | ████ | $ ████ |
| LaPatrick | LaPatrick Washington-Sutton | | $ | ████ | $ | ████ | $ ████ |
| Larry | Larry Wehunt | | $ | ████ | $ | ████ | $ ████ |
| Kenneth | Kenneth Wilcox | | $ | ████ | $ | ████ | $ ████ |
| Jessica | Jessica Williams | | $ | ████ | $ | ████ | $ ████ |
| Michele | Michele Williams | | $ | ████ | $ | ████ | $ ████ |

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALANDO SMITH, and MAURICE HARRIS-BALL, individually and on behalf all others similarly situated,<br><br>                              Plaintiffs,<br><br>         v.<br><br>ALAMO CLAIM SERVICE, PETER PERRINE, THORLIN LEE,DAVID SERFASS, CIS ALAMO, LLC, and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>                              Defendants. | Case No.:<br>13 Civ. 01481-JES-JEH |

### SETTLEMENT AND RELEASE AGREEMENT ACKNOWLEDGMENT

I received a copy of the Settlement and Release Agreement and I agree to its terms, including the service payments to the Named Plaintiffs and attorneys' fees and costs. By accepting the settlement payment in the amount of $[insert amount], issued in the following manner: [insert amount] representing wages issued via Form W-2 and $[insert amount] representing liquidated damages issued via Form 1099, I release my claims as described in the Settlement and Release Agreement.


_____          _____
(Sign your name here)                              (Date)


_____
Print Your Name Here


_____

_____
Mailing address for settlement checks

## EXHIBIT 4

1.  If the Court grants Plaintiffs' Motion for Approval of the Settlement, the Court will issue a Final Order and Judgment for Dismissal.

2.  Within ten (10) days after the expiration of the thirty (30) day appeal period following the Court's final approval of the terms of this Agreement and the entry of the Judgment of Dismissal, Alamo shall: deposit with the Settlement Administrator the gross sum of ███████████ (██████████) ("**Settlement Amount**") in full resolution of all of Plaintiffs' claims, including attorneys' fees and costs.

3.  Within ten (10) days after the expiration of the thirty (30) day appeal period following the Court's final approval of the terms of this Agreement and the entry of the Judgment of Dismissal, Plaintiffs' Counsel shall provide the Settlement Administrator and Alamo with the Plaintiffs' last known mailing addresses, social security number, and each respective Plaintiffs' settlement amounts (including both W-2 and 1099 portions).

4.  Within five (5) days of receiving the settlement funds the Settlement Administrator shall mail to the Plaintiffs, via First Class United States Mail and postage prepaid their settlement checks. The Settlement Administrator shall also provide a dedicated telephone number for Plaintiffs to call. If needed, the Settlement Administrator shall re-mail and/or re-issue settlement checks.

5.  Within five (5) days of receiving the settlement funds the Settlement Administrator shall electronically wire Plaintiffs' Counsel their attorneys' fees and costs.

6.  Within five (5) days of receiving the settlement funds, the Settlement Administrator shall determine the employer's share of employer-paid and due taxes on the W-2 portions of the Settlement Amount and provide notice to Alamo and Plaintiffs' counsel; within fifteen (15) business days after receipt of said notice, Alamo shall pay those additional portions over to the appropriate payees as identified by the Settlement Administrator.

7.  Beginning the date that settlement payment checks are issued, the Settlement Administrator shall provide counsel for the Plaintiffs and Alamo with weekly summaries, including information about which Plaintiffs' checks were returned and which Plaintiffs did not cash their checks.

8.  The Parties will work together in good faith and with the Settlement Administrator to ensure that Plaintiffs receive their settlement checks.

9.  Any uncashed checks remaining one hundred twenty (120) days after the Court's order approving the settlement shall be paid over by the Settlement Administrator to the unclaimed property division of the last known state of residence of each respective Plaintiff.  The Settlement Administrator will then promptly issue to Alamo and Plaintiffs' counsel a final report of all disbursements that includes the payee, amount, and date that each payment was negotiated by the payee.

10. The Court will retain jurisdiction over the case following the entry of the Judgment of Dismissal until one-hundred twenty (120) days after the end of the Acceptance Period.  The Parties will notify the Court of the expiration of the Acceptance Period.